# Sloss-Sheffield S. & I. Co. *v.* Prior.

*Trover and Trespass.*

(Decided July 2, 1907. 44 South. 649.)

*Master and Servant; Rules and Regulations; Reasonableness.*— A rule promulgated by the owner of mines prohibiting anyone from entering said mines except employes, is a reasonable rule and the mine owner is under no legal duty to permit striking employes to go into its mines to get tools.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by Thomas H. Pryor against the Sloss-Shef-field Steel & Iron Company.  Judgment for plaintiff, and defendant appeals.  Reversed and remanded.

The complaint in this cause contained three counts— the first, in trespass for the wrongful taking of a lot of tools; second, damages for conversion of the same tools; and, third, detinue for the same tools.  The case seems to have been tried on the count in detinue, and resulted in a verdict for the plaintiff.  The defendant requested in writing certain charges, which were refused, among them the following:  "(2) The defendant was under no legal duty to permit either Linton or Pryor to go into its mine for the purpose of getting his tools, if contrary to defendant's rules and regulations; and the court further charges the jury that, if the defendant had a rule that miners who had left its employment were not allowed to enter its mines, such rule was a reasonable rule.

TILLMAN, GRUBB, BRADLEY & MORROW, for appellant. —Counsel discuss the necessity for demand and refusal and cite authorities in support thereof, and insist without citation of authority that charge 2 was improperly refused.

FRANK S. WHITE & SONS, for appellee.—Counsel insist that the bill of exceptions was not signed in time and should be stricken.  They also insist and cite authorities to sustain their contention, that demand was made and refusal entered sufficient to sustain the suit. They insist that the rule was an unreasonable one and that charge 2 was properly refused, but cite no authorities.

HARALSON, J.—In doing work in defendant's mine, the plaintiff used his own tools—the ones sued for.

37 R

Plaintiff's testimony tended to show, that he became sick in June, 1904, and left the service of defendant, leaving his tools at his working place in the mine, which was according to the custom of the employes therein; that he had a partner, Linton, who continued to work, using plaintiff's tools, until July 1st, when all the miners of the United Mine Workers, to which organization plaintiff belonged, went out on a strike, and plaintiff did not return to work; that when Linton, his partner, quit defendant's service, on July 1st, he piled his own and plaintiff's tools in a place selected by him in his working place in the mine, but did not notify defendant that he was leaving the tools. It further tended to show, that plaintiff went to the mine boss, Palmer, and asked him for permission to go into the mine to get his tools, and the boss referred him to the superintendent, Payne; that afterwards, he went to Payne and asked permission to go into the mine to get his tools, and Payne refused to let him enter for that purpose; that plaintiff sent Linton, his partner, to Payne, the superintendent, for the purpose of getting his tools and Linton first saw the boss, Palmer, and asked Palmer for permission to enter the mine to get his tools, and Palmer told him he would not let him go into the mine, but if he would give him a list of the tools, and tell him where they were, he would go into the mine as soon as he conveniently could and bring out the tools, if he could find them, and notify him, Linton, and deliver them to him, and that Linton told Palmer that the tools were hidden under some "gob," and Palmer told him, in order to go in, he would have to see the superintendent, Payne, as none but employes were permitted to enter the mines; that Linton also saw Payne, and asked permission to enter, and Payne also told him he could not let him go into the mine, but that if he would give him a list, he

would get the tools for him; that Linton proposed to get an officer to go for or with him ,as he only knew where the tools were; that all the miners, among whom were plaintiff and Linton, were under injunction not to trespass upon defendant's property, and warning notices, not to trespass, were conspicuously posted about the mine.

It was shown that the rules of the defendant's prevented any one, except employes of defendants' from entering the mine, and Palmer testified that Linton never came to him after he had gone to see Payne.

There is no dispute as to the ownership of the tools and their possession by the plaintiff before they were left in the mine.

It seems to be conceded by defendant's counsel that the tools were in possession of defendant at the time plaintiff made the demand to be allowed to go into the mine to get them. We will, therefore, pretermit a discussion of the question of possession, and the effect of the demand upon plaintiff's right to bring and maintain the action.

The defendant had a rule, which was reasonable, under all the conditions, that no one should enter the mine, except an employe. A strike was on, and the evident purpose of the rule, was to keep out men belonging to the striking union, who might cause trouble with the non-union employes in the mine.

It follows that charge 2, requested by defendant, should have been given.

Reversed and remanded.

TYSON, C. J., and SIMPSON and DENSON, JJ., concur.